1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  CHRISTOFFER LEE (CABN 280360)
   KRISTINA GREEN (NYBN 5226204)
5  Assistant United States Attorney

6      150 Almaden Boulevard, Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5061
       Fax: (408) 535-5081
8      christoffer.lee@usdoj.gov

9  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 20-371 JD |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| BHUPINDER BHANDARI, | |
| Defendant. | |

## I. INTRODUCTION

On June 6, 2022, Defendant Dr. Bhupinder Bhandari plead guilty to Count Seven of the Superseding Indictment in the above-captioned case, charging him with a felony violation of 42 U.S.C. § 1320a-7b(b), the Anti-Kickback Statute. This case originated from an investigation by the Federal Bureau of Investigation (FBI) into Bay Area doctors who referred patients to home health and hospice care in exchange for payments (kickbacks). As part of the investigation, the FBI launched an undercover operation, wherein an undercover FBI agent portrayed him/herself as someone representing investors intent on acquiring and expanding the patient population of a home health agency through

illegal kickbacks. During the undercover, another physician introduced Defendant to the UCE as a physician willing to accept kickbacks in exchange for the referral of Medicare patients. The UCE then met with Defendant in the summer of 2017 and ultimately solicited and received a $1,000 cash payment as a retainer for anticipated future referrals of Medicare patients to the home healthcare agency purportedly represented by the UCE.

The U.S. Probation Officer has generated a thorough report, recommending a 3-year term of probation and imposition of a $5,000 fine. The guidelines range for Defendant, given his lack of criminal history, is 0-6 months of custody.

For the reasons discussed below, the government respectfully joins in Probation's recommendation. On the facts of this particular case, such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2), as described in more detail below.

## II. OFFENSE AND RELEVANT CONDUCT

Defendant was a gastroenterologist practicing internal medicine in Hayward and Fremont; he accepted a cash kickback during an undercover operation in exchange for referring patients to a certain home health agency. *See generally* Bhandari Plea Agreement Dkt. No. 74 ("Plea Agmt."), ¶ 2 and Bhandari Presentence Investigation Report, Dkt. No. 78 ("PSR"), ¶¶ 6-11, 49.

Several years ago, FBI agents began looking into kickbacks in the San Francisco Bay Area, specifically in the fields of home health and home hospice. The investigation arose from concerns of false billing and referrals without patient care in mind—that when kickbacks were paid for referrals, health care providers would have a willingness to expose patients to unnecessary treatments that certain home health agencies (HHAs) would have an inclination to bill for, but not necessarily following through with providing the necessary services. An undercover operation was selected as the means of investigating kickbacks in the industry. As part of the undercover operation, an undercover FBI agent (undercover employee or UCE), portrayed him/herself as someone representing investors intent on acquiring and expanding the patient population of another local HHA—HHA Alpha—through illegal kickbacks. PSR ¶¶ 7-8.

In April 2017, another physician met with the UCE as part of the undercover operation and, once

aware of the UCE's pitch, introduced Defendant Bhandari as a "hospital-based M.D." who would be willing to accept kickbacks in exchange for patient referrals. The UCE sent Defendant a text message saying he/she was a "business partner" of the other physician and wanted to meet with Defendant to explain their "business model." *Id.* ¶ 8.

On June 22, 2017, Defendant met with the UCE who purportedly represented HHA Alpha. The UCE offered to pay Defendant cash in exchange for patient referrals to the home health business he purportedly represented. At the conclusion of the meeting, Defendant accepted $1,000 cash from the UCE as a good-faith payment in exchange for his future patient referrals. On June 26, 2017, Defendant referred a Medicare beneficiary to the home health business purportedly represented by the UCE. Plea Agreement ¶ 2; PSR ¶ 9.

On July 28, 2017, Defendant met with the UCE again and returned the $1,000 cash paid by the UCE during the previous meeting, stating "we want to mindful of the law. The law is kind of saying you can sell your services but you can't sell your patients." Defendant returned the cash because he was aware that he was not supposed to take kickbacks for patients. Afterwards, however, Defendant discussed the situation with the physician who introduced him to the UCE in the first instance and Defendant again became comfortable with the arrangement. Plea Agreement ¶ 2; PSR ¶ 10.

On November 30, 2017, Defendant agreed to "reinitiate" the working relationship first proposed by the UCE and was "happy to continue," at which point Defendant solicited and received a $1,000 cash payment from the UCE as a retainer for anticipated future referrals of Medicare patients to the HHA Alpha. Plea Agreement ¶ 2; PSR ¶ 10. During the kickback arrangement, Defendant received, in total, $2,000 in cash from the UCE in exchange for agreeing to refer Medicare patients and as retainers for Defendant's anticipated future referrals of patients to the home health business, although he retained only $1,000 given his return on July 28, 2017 of the initial $1,000 received.

### III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's calculations as to the applicable Sentencing Guidelines, which mirror the calculations in the plea agreement. *See* PSR at ¶¶ 16-24 and Plea Agmt. ¶7.

The government agrees that Defendant's Base Offense Level is 6, PSR ¶ 16. The government further agrees that a two-level adjustment for abuse of a position of public or private trust applies given Defendant's role as a medical doctor entrusted by his patients, medical facilities, and the state's medical board to provide proper medical care to his patients based on needs and not personal motive for financial profit. *Id.* ¶ 19; *see also* USSG § 3B1.3. Additionally, the government agrees that no Specific Offense Characteristics apply given the particular facts of the charged conduct. *Id.* ¶ 17. The Adjusted Offense Level (Subtotal) is 8. However, the government agrees that a two-level reduction for acceptance of responsibility applies pursuant to USSG §§ 3E1.1(a). *Id.* ¶ 23. Thus, Defendant's Total Offense Level is 6. *Id.* ¶ 24.

The government also agrees with Probation's finding that Defendant has 0 Criminal History Points, placing him in Criminal History Category I. PSR ¶ 28. A Total Offense Level of 6 with a Criminal History Category I yields an advisory sentencing range of 0-6 months.

### IV. SECTION 3553(a) FACTORS

Defendant plead guilty pursuant to a Rule 11(c)(1)(B) plea agreement between the parties. The government agreed to dismiss any open charges pending against the defendant in the captioned Superseding Indictment at the time of sentencing.

While sentencing courts must consider each of the factors set forth in section 3553(a), the following warrant further discussion in this case: the need for the sentence imposed to reflect the seriousness of the offense, 18 U.S.C. § 3553(a)(2)(A), and to afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B), as well as the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1).

Defendant knew better and should have done better. Defendant had the privilege of serving as a medical doctor in the community. He accepted a kickback to refer Medicare patients to a particular home health agency. He returned the kickback money thereafter, noting the illegality, but then nonetheless agreed to accept another $1000 as a retainer for future kickbacks. The conduct is serious, and the felony conviction will serve as a powerful general and specific deterrent, and will likely have serious collateral consequences on Defendant's ability to practice medicine in the future. Given

Defendant's lack of criminal history, the particular facts of this case, and Defendant's acceptance of responsibility by entering into the plea agreement, the government joins US Probation's recommendation that the Court impose a three-year term of probation.

## V.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a three-year term of probation and order forfeiture of the $1000 received as kickbacks during the undercover operation (PSR ¶ 4, 69-70), and otherwise impose the terms and conditions recommended by Probation in the PSR.

DATED:  November 28, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

 */s/ Christoffer Lee*
CHRISTOFFER LEE
Assistant United States Attorney